S98G1494. MARTIN v. JOHNSON-LEMON.
(516 SE2d 66)

SEARS, Justice.
We granted certiorari in this case to consider whether, in reversing the trial court's grant of summary judgment to the defendant landlord in this wrongful death action, the Court of Appeals errone-

---

ously expanded the statutory bases for an out-of-possession landlord's liability to third persons injured on leased property. We conclude that, because an out-of-possession landlord's tort liability to third persons is determined under the bases set forth in OCGA § 44-7-14, the Court of Appeals erred by assessing liability in this case under principles not set forth in the statute, including common law principles of ordinary negligence. Therefore, we reverse.

Carl Lemon was a guest at property owned and rented, but not occupied, by appellant Martin, when he dove into a swimming pool located on the leased property, hit his head on the bottom of the pool, and was rendered unconscious. Because none of the bystanders knew how to swim, they were unable to enter the pool and rescue Carl Lemon, who drowned as a result of his injury. The swimming pool had no depth markers. Uncontroverted evidence of record shows that prior to the accident, Martin's tenants, who had resided in the rental house for some time, had determined the approximate various depths of the pool. It also is uncontroverted that on the date of, but prior to the time of, the drowning, the tenants had demonstrated and explained the pool's various depths to Carl Lemon. The tenants' demonstration included showing Carl Lemon where the pool's safety equipment was located, and where the pool's depth reached roughly six feet and began to slope to a deeper end. Evidence of record indicates that Carl Lemon had received swimming instruction while in the United States Navy, and considered himself a good swimmer. Immediately prior to the accident, he had successfully entered the pool by diving safely into the deep end in order to retrieve flotation devices from the pool.

Carl Lemon's widow ("Lemon") sued appellant Martin for wrongful death, alleging that Martin negligently failed to have depth markings, and negligently failed to install safety equipment, at the pool.[1] Lemon supplied an expert's affidavit attesting that the pool should have had depth markings, as required for certain pools by DeKalb County regulations, and that such markings would have put the average person on notice of the dangers attendant to swimming in the pool. Lemon's expert concluded that the failure to have those items at the pool deviated from a normal standard of care. Martin disputed those allegations with evidence of his own and, on cross motions, the trial court granted Martin's summary judgment motion.

---

[1] Among other things, Lemon alleged that there was no safety equipment at the pool, such as floatation devices or a lifeline that would have enabled the bystanders to enter the water and save Carl Lemon. Appellant Martin, however, disputed this allegation with evidence that flotation devices were kept around the pool at the time of Carl Lemon's accident. In fact, the tenant's own deposition testimony is that there was safety equipment kept at the pool at the time of the accident. It is undisputed, however, that there were no depth markings at the pool.

The Court of Appeals reversed.[2] The appeals court first correctly concluded that in her complaint against Martin, Lemon had pleaded, but had not proved, the DeKalb County regulations governing swimming pools. Therefore, the trial court had properly excluded the DeKalb County regulations from its consideration, as well as that part of Lemon's expert's affidavit that concluded Martin had failed to conform his leased pool to the DeKalb County regulations.[3]

The Court of Appeals then reasoned that summary judgment in Martin's favor was inappropriate, because disputes of material fact existed regarding (1) whether Martin was liable due to his "failure to exercise ordinary care under common law negligence"; (2) whether Martin was liable for negligently creating and maintaining latent defects associated with the pool's construction and the equipping of the pool; and (3) whether Carl Lemon knew of the pool's latent defects before he dove into the water and nonetheless failed to exercise due care for his own safety.[4]

This Court granted certiorari. As explained below, we conclude that in its opinion, the Court of Appeals erroneously expanded the statutory liability of an out-of-possession landlord. Accordingly, we reverse.

1. As conceded by the parties, at all times relevant to this matter, Martin was an out-of-possession landlord. Hence, he is subject to tort liability only under the provisions of OCGA § 44-7-14, which states that:

> Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

In reversing the grant of summary judgment in Martin's favor,

---

[2] *Lemon v. Martin*, 232 Ga. App. 579 (502 SE2d 273 ) (1998).

[3] Id., 232 Ga. App. at 581-582. The parties concede that, when the pool was installed on Martin's property in 1979, DeKalb County regulations did not require depth markings. Hence, there is no dispute that, at the time the pool was constructed, it complied with all relevant regulations. As shown by documentation filed in support of appellee's summary judgment motion, the county regulations were subsequently amended to require such markings (although it is not clear from the record that the amended regulations applied to the swimming pool in this case). The fact that the regulations were later amended to require depth markings on some pools is irrelevant to this matter, because, as explained above, appellee failed to follow the procedures necessary to establish the regulations' existence before the trial court, and hence they are not part of the record on appeal.

[4] Id., 232 Ga. App. at 582-583.

the Court of Appeals erred by primarily assessing Martin's potential liability based upon principles of common law negligence. In so doing, the Court of Appeals implicitly analyzed this case under Code section 51-3-1, which sets forth the general duty owed by an occupier of land to invitees, and is inapplicable to this matter.[5] "A landlord's [tort] liability to a third person who is injured on property which was relinquished by rental or under a lease is determined by OCGA § 44-7-14."[6] By applying the principles described in section 51-3-1 to Martin in this case, the Court of Appeals erroneously expanded the potential liability of out-of-possession landlords well beyond the intended legislative scope.

2. Under the clear language of OCGA § 44-7-14, Martin, as an out-of-possession landlord, cannot be held liable for damages in tort resulting from a third party's use of the swimming pool, unless it is shown that the damages occurred due to Martin's failure to repair the pool, or due to his defective construction of the pool.

(a) Regarding Martin's statutory duty to repair, it is not alleged, and is not shown in the record, that the swimming pool ever was in a state of disrepair. A repair "contemplates an existing structure . . . which has become imperfect, and means to supply in the original structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be."[7] There being no allegations or evidence in this case that the pool was in need of restoration to its original condition due to loss or destruction, Martin cannot be held liable under his statutory duty as an out-of-possession landlord to keep the premises in repair.

In considering whether Martin breached his statutory duty to repair, the Court of Appeals erred by stating that Martin could be held responsible under the Code for damages resulting from "negligent maintenance" of the pool.[8] By its plain and unambiguous terms, OCGA § 44-7-14 does not impose a duty of maintenance on an out-of-possession landlord, only a duty of repair. In this regard, too, the Court of Appeals erroneously expanded the scope of an out-of-possession landlord's potential tort liability to third persons, as set forth in section 44-7-14.

---

[5] That Code section provides:
Where *an owner or occupier of land,* by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.
(Emphasis supplied.)

[6] *Colquitt v. Rowland,* 265 Ga. 905, 906 (463 SE2d 491) (1995).

[7] *Travelers Indemnity Co. v. Wilkes County,* 102 Ga. App. 362, 364 (116 SE2d 314) (1960).

[8] 232 Ga. App. at 582.

(b) Regarding Martin's potential liability under section 44-7-14 for defective construction, " 'the liability of a landlord for defective construction exists only in cases where the structure is built by him in person or under his supervision or direction.' "[9] Appellee alleges that the failure to install depth markers at the pool's side at the time of its installation evidences its faulty construction, and provides a basis for Martin's liability. The parties concede that the swimming pool was constructed on the property by an independent contractor in approximately 1979. At that time, Martin held record title to the property, and resided with his family on the property (the property and residence were not rented by Martin until approximately 1989). The evidence of record indicates that in 1979, Martin hired an independent contractor to construct a standard swimming pool, and that Martin did not request that the independent contractor do anything to alter the standard, or "pre-packaged," design of the pool to be constructed.[10] The independent contractor obtained all necessary permits for the pool, and ensured that the proper DeKalb County official inspection and certification procedures were complied with. There is no evidence of record to indicate that Martin engaged in any actual supervision of the pool's construction, or oversaw any aspect of the construction whatsoever. The undisputed evidence of record is that Martin's involvement with construction of the pool began and ended with the hiring of an independent contractor, and the selection of a standard pool design.

Our case law does not define what degree of involvement is required before an out-of-possession landlord will be deemed to have "supervised or directed" construction on leased premises, thereby subjecting him or herself to liability under OCGA § 44-7-14. Each case, we believe, will be factually unique and thus this inquiry must be conducted on a case-by-case basis. The facts of this case, discussed above, show that Martin's involvement with the independent contractor's installation of the swimming pool was minimal. Martin simply selected a standard pool design, hired and paid an independent contractor, and retained the right to require that the terms of the employment agreement were complied with. Martin did not retain for himself any powers of oversight, approval or supervisory direction. The evidence of record indicates that the method and means of constructing the pool were left entirely to the independent contractor's discretion. In fact, it is impossible to imagine how Martin's

---

[9] *Flagler Co. v. Savage*, 258 Ga. 335, 337 (368 SE2d 504) (1988), quoting *Ross v. Jackson*, 123 Ga. 657, 659 (51 SE 578) (1905).

[10] When asked during his deposition about certain design features of the pool, Martin simply answered that "that's the way they [the pool company] designed it," or "the pool came with that."

degree of involvement with the independent contractor could have been more minimal and still have constituted an effective employment agreement. Accordingly, we conclude that under the facts of this case, Martin's actions in connection with the swimming pool's construction did not, in and of themselves, subject him to tort liability for "defective construction" under OCGA § 44-7-14.[11]

3. The dissent urges that Martin can be held liable as an out-of-possession landlord because, by accepting the swimming pool from the independent contractor, Martin is deemed to have ratified and assumed responsibility for any defects in the pool's construction. The dissent's argument, however, is flawed. The dissent is premised upon two cases from the Court of Appeals — *Hickman v. Toole*[12] and *Queen v. Craven*.[13] Only one of these cases, *Hickman*, concerns a tort suit brought by a tenant against a landlord. Moreover, neither *Hickman* nor *Queen* discusses the statutory limitations placed upon the liability of an out-of-possession landlord by OCGA § 44-7-14 and its predecessor Code sections. Because these two Court of Appeals cases fail to address the statutory provisions regarding an out-of-possession landlord's liability in cases such as this one, they can have no influence on our review of this case.

The dissent also relies upon the general provision that "for every right, there shall be a remedy."[14] However, notwithstanding this general provision, the legislature has opted to expressly limit the potential liability of out-of-possession landlords by enacting OCGA § 44-7-14. The argument urged by the dissent would effectively eviscerate section 44-7-14, and render the limitations imposed therein null and void. As we conclude in Divisions 1 and 2 above, any alteration or expansion of an out-of-possession landlord's statutory liability must emanate from the legislature and not from the courts of this State.

4. This Court's ruling in *Flagler Co. v. Savage*, supra, that notwithstanding the provisions of OCGA § 44-7-14, an out-of-possession landlord may be held liable for damages resulting from defective construction performed by a predecessor-in-title is not applicable to the

---

[11] This conclusion is consistent with the law regarding respondeat superior, which, while not directly on point, is nonetheless instructive. As a general matter, consistent with OCGA § 44-7-14, an employer is not responsible under respondeat superior for the acts of an independent contractor, unless the contractor is subject to the immediate direction and control of the employer. OCGA § 51-2-4. (But see OCGA § 51-2-5 for exceptions to this rule.) If the employer merely retains the right to require results in conformity with the employment contract, and the independent contractor retains the right to perform the work by his or her own method and manner, then as a general rule, the employer will not assume respondeat superior liability for the independent contractor's acts. *Owens v. Barclays American Mortgage Corp.*, 218 Ga. App. 160, 161 (460 SE2d 835) (1995).

[12] 31 Ga. App. 230 (120 SE2d 438) (1923).

[13] 95 Ga. App. 178 (97 SE2d 523) (1957).

[14] OCGA § 9-2-3.

facts of this case. In *Flagler*, it was held that:

"The liability of a landlord for defective construction exists only in cases where the structure is built by him in person or under his supervision or direction. *If a building [or structure] were defectively constructed by a predecessor in title,* and the landlord knew or by the exercise of reasonable diligence could have known of its improper construction before the tenancy was created, he would be answerable to the tenant, or to any one lawfully on the premises by invitation of the tenant, for injuries sustained by reason of his failure to put the premises in safe condition, if the person sustaining the injuries could not have avoided the same by the exercise of ordinary care."[15]

By its plain language, this exception to the statutory limits of an out-of-possession landlord's liability for alleged defective construction applies *only* to situations where the construction was performed by a predecessor-in-title. In this case, as explained above, there is no dispute that the swimming pool was constructed while Martin himself held title to the property. Hence, this rule of law is not applicable to the facts of this case.[16]

*Judgment reversed. All the Justices concur, except Carley and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

Although I join the majority in its disagreement with the legal reasoning of the Court of Appeals in *Lemon v. Martin*, 232 Ga. App. 579 (502 SE2d 273) (1998), I do believe that, when the "right for any

---

[15] *Flagler*, 258 Ga. at 337 (emphasis in original), quoting *National Distrib. Co. v. Ga. Ind. Realty Co.*, 106 Ga. App. 475, 477 (127 SE2d 303) (1962).

[16] At first glance, *Flagler's* limited exception to the statutory limits of an out-of-possession landlord's tort liability, where alleged defective construction was performed by a predecessor-in-title, would appear to contradict the precise terms of OCGA § 44-7-14. However, while not necessary to our ruling in this case, we believe there may be reasons to support the *Flagler* exception. When purchasing commercial or residential property, it is standard practice to engage in a thorough inspection of the property — including the integrity of any structures thereon. Frequently, this structural inspection is required by lenders, and a purchaser usually employs one or more professionals to conduct the inspection. If unacceptable structural defects are discovered, the purchaser typically may revoke the offer to purchase. Furthermore, disclosure requirements mandate that sellers of real estate disclose to potential purchasers any structural defects known to them at the time title is transferred. Because of these unparalleled opportunities for a purchaser of rental property to discover defects in structures erected by predecessors-in-title, they may be held responsible for those defects which they knew of or by the exercise of reasonable diligence could have known of before creating a tenancy.

As noted above, though, by its plain terms, the *Flagler* exception cannot be applied to the facts of this case.

reason" principle is applied, we should affirm the Court of Appeals' reversal of the grant of summary judgment in favor of the defendant-landlord. Therefore, I dissent.

Ms. Alice Johnson-Lemon brought this wrongful death action against John Martin. Because Martin is an out-of-possession land-lord, the majority correctly holds that his liability must be deter-mined under OCGA § 44-7-14, rather than OCGA § 51-3-1. *Tribble v. Somers*, 115 Ga. App. 847, 849 (156 SE2d 130) (1967). Pursuant to OCGA § 44-7-14, Martin can be held liable "for damages arising from defective construction *or* for damages arising from the failure to keep the premises in repair." (Emphasis supplied.) The evidence shows that Ms. Johnson-Lemon's husband drowned in a pool which, as orig-inally constructed, had no visible depth markings. According to the affidavit of an expert which the plaintiff offered in opposition to Mar-tin's motion for summary judgment, such a pool would evidence deviation from the applicable standard of care. Thus, even in the absence of admissible evidence of the DeKalb County pool rules and regulations, the expert's affidavit was sufficient to show that the pool, as initially constructed, was defective. Thus, the viability of Martin's motion for summary judgment is dependent upon whether this defect in the pool is attributable to his failure to repair the prem-ises or to his construction of that defective addition to his property.

The majority correctly holds that no genuine issue of material fact remains as to Martin's liability for a failure to repair the pool. The alleged defect is in the original design and is not in the subse-quent maintenance of the pool. However, I submit that the majority incorrectly concludes that Martin, as owner, cannot be held liable under OCGA § 44-7-14 for *construction* of the allegedly defective pool. The pool actually was built by an independent contractor, and the owner ordinarily would not be liable for a tort attributable to that entity. OCGA § 51-2-4. There are, however, exceptions, one of which is that the owner can be held liable if he ratified the construction of the allegedly defective pool by accepting it from the independent con-tractor. OCGA § 51-2-5 (6).

[A]fter the contractor has completed the work and turned it over to the owner, and it has been accepted by the owner in discharge of the contract, the general rule is that the respon-sibility, if any, for maintaining it in its defective condition is shifted to the owner. [Cit.]

*Hickman v. Toole*, 31 Ga. App. 230, 231 (2) (120 SE 438) (1923).

[I]t is a well established general rule that, where the work of an independent contractor is completed, turned over to, and

accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection. [Cits.]

*Queen v. Craven*, 95 Ga. App. 178, 183-184 (3) (97 SE2d 523) (1957). Construing the evidence most strongly against Martin, he knew or should have known of the patent absence of any depth markings at the time he accepted the pool from the independent contractor. See *Wilmock v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987). Thus, I believe that the trial court erred in granting summary judgment.

Citing *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2) (368 SE2d 504) (1988) and *Ross v. Jackson*, 123 Ga. 657, 659 (51 SE 578) (1905), the majority nevertheless concludes that Martin could not be liable under OCGA § 44-7-14 for defective construction because he did not personally build the pool and it was not built under his personal "supervision or direction." However, the majority misconstrues both *Flagler Co.* and *Ross* as authority for the proposition that a landlord must take such an active role in the construction in order to be held liable for a defect in a completed and accepted project. Nothing in either case supports the conclusion that OCGA § 51-2-5 (6) is applicable in an action brought against a landlord under OCGA § 44-7-14. Instead, it is clear that, in both of those cases, this Court was simply attempting to distinguish between the two theories of liability imposed upon a landlord by OCGA § 44-7-14. In order for a defendant landlord's liability for defective construction to attach, the alleged defect must date from a time when the defendant had an interest in the property and he must be personally responsible for its addition to the premises. Thus, imposition of liability under that theory depends upon proof that the allegedly defective structure was built by the defendant either in person or under his supervision or direction, as opposed to having been built by or under the direction or supervision of another owner or occupier of the property. See *Colquitt v. Rowland*, 265 Ga. 905, 906 (1) (463 SE2d 491) (1995) (landlord not liable for defective pool erected by tenant). If, on the other hand, the alleged defect is attributable to a predecessor in title or other occupant of the property, the landlord's liability can be based only upon the alternative theory that he breached the duty to repair the premises.

In this case, there is no question that Martin's potential liability is premised upon the theory of defective construction, rather than negligent repair, since the pool was built at his express personal direction by the independent contractor. Because he owned the prop-

erty at the time the pool was built and he directed that it be constructed, Martin can be held liable under OCGA § 44-7-14 if he accepted that improvement from the independent contractor in its allegedly defective condition. The independent contractor who allegedly created the defect in the pool which ultimately produced the death of Ms. Johnson-Lemon's husband is not liable,

> unless it is made to appear from the allegations that the work was still in progress and had not been completed and accepted by the landlord, *for otherwise the inference arises that the landlord has accepted the work, and is answerable for any damages instead of the contractor, whether occasioned by negligence or trespass.*

(Emphasis supplied.) *Townsend & Ghegan Enterprises v. W. R. Bean & Son*, 117 Ga. App. 109, 118 (10) (159 SE2d 776) (1968). It is undisputed that the pool was completed and accepted by Martin. Because the trier of fact could find that the pool was patently defective at that time, Martin may be liable as a landlord for a death attributable to that alleged defect even though the structure was built by an independent contractor. See *National &c. Co. v. Georgia &c. Realty Co.*, 106 Ga. App. 475, 477 (2) (127 SE2d 303) (1962).

It is a fundamental principle of Georgia law that "[f]or every right there shall be a remedy. . . ." OCGA § 9-2-3. However, the consequence of the majority opinion is that, although the evidence in this case has not eliminated the existence of a possible defect in Martin's pool which resulted in a death, Ms. Johnson-Lemon has no legal means of recovering for her loss. I agree that she cannot sue the independent contractor since the owner accepted the pool after construction. However, according to the majority, she also cannot sue Martin because he hired an independent contractor to build the pool. At least until today, the Georgia courts have never sanctioned such an anomalous result. Heretofore, the injured plaintiff could bring suit against the landlord under OCGA § 44-7-14 on the theory that he accepted the independent contractor's defectively constructed project. A landlord should not be held liable for defects which he himself did not place or cause to be placed on his property. *Colquitt v. Rowland*, supra. On the other hand, however, a landlord should not be immune from tort liability for acceptance of a patently defective condition in a structure which he directed to be constructed on the premises by an independent contractor. Because I cannot agree with the sweeping change in this state's law effectuated by the majority, I dissent.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED MAY 3, 1999 —
RECONSIDERATION DENIED MAY 28, 1999.

*Gray & Hedrick, L. Bruce Hedrick,* for appellant.
*Blank & Associates, A. Russell Blank, Dennis A. Brown,* for appellee.