## A02A0051. RAINEY et al. v. 1600 PEACHTREE, LLC.
### (565 SE2d 517)

RUFFIN, Judge.

Eleanor Rainey was injured when she slipped and fell on an allegedly unsafe step while leaving a building at 1600 Peachtree Street. Rainey sued 1600 Peachtree, LLC for negligence, and her husband brought a loss of consortium claim. 1600 Peachtree moved for summary judgment, which the trial court granted. This appeal ensued. For reasons that follow, we affirm.

On appeal from a grant of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party.[1] So viewed, the record shows that Equifax hired contractors to construct three buildings at 1600 Peachtree Street. On March 11, 1994, 1600 Peachtree purchased the complex from Equifax. That same day, 1600 Peachtree leased the facilities back to Equifax. Under the terms of the lease, Equifax remained responsible for maintaining and repairing the premises.

On September 16, 1998, Rainey, an Equifax employee, left the building using an exit that she had never used before. When Rainey stepped out of the building, she fell on a step she described as "unsafe." According to Rainey, the step was partially hidden and was

---

[1] See *Jackson v. Ford*, 252 Ga. App. 304 (1) (555 SE2d 143) (2001).

not built in compliance with existing safety codes. Rainey retained an expert "accident construction and cause analysis engineer" who averred that "[t]he defect with the exit way was evident upon a rudimentary investigation." Specifically, the expert stated that the steps "were unequal as to the height, length and width" and that the landing was not the same width as the door as required by the building code.

Rainey sued 1600 Peachtree, claiming that the landlord either knew or should have known about the defect, yet failed to warn of the defect or repair the step. 1600 Peachtree moved for summary judgment, asserting that, as an out-of-possession landlord, it could not be held liable for Rainey's injuries. The trial court agreed and granted the motion.

Rainey contends that the trial court erred in granting summary judgment because issues of fact remain regarding whether 1600 Peachtree breached a duty of care it owed her under OCGA § 51-3-1 and/or § 44-7-14. We disagree.

It is undisputed that 1600 Peachtree is an out-of-possession landlord. Thus, OCGA § 51-3-1, which sets forth the general duties of an owner/occupier of land, does not apply.[2] Rather, this case must be analyzed under OCGA § 44-7-14, which sets forth the obligations of a landlord.[3] Under this Code section, an out-of-possession landlord is not liable to third persons for damages in tort unless it is shown that the damages resulted either from failure to repair the premises or faulty construction of the premises.[4]

"The liability of an owner for failure to repair who . . . has fully parted with possession and the right of possession[ ] arises only in instances where there is a duty to repair and notice has been given of the defect."[5] However, nothing prohibits a landlord of commercial premises from assigning by contract its duty to repair and maintain the premises.[6] Here, the contract between 1600 Peachtree and Equifax placed the duty to repair and maintain the premises squarely on Equifax. It follows that 1600 Peachtree cannot be held liable for breaching this duty.[7]

Thus, 1600 Peachtree's liability, if any, must be predicated upon the faulty construction of the premises. It is undisputed that 1600

---

[2] See *Martin v. Johnson-Lemon*, 271 Ga. 120, 122-123 (1) (516 SE2d 66) (1999).

[3] See id.

[4] See id. at 123 (2).

[5] (Punctuation and emphasis omitted.) *Johnson v. Loy*, 231 Ga. App. 431, 434 (2) (499 SE2d 140) (1998).

[6] See id. at 434-435; see also *Groutas v. McCoy*, 219 Ga. App. 252, 254 (1) (464 SE2d 657) (1995) ("the owner of property not used as a 'dwelling place' . . . can contract to avoid the duties to repair and improve the property set forth in OCGA §§ 44-7-13 and 44-7-14").

[7] See id.; *Johnson*, supra.

Peachtree did not construct the premises, which, under the general rule of OCGA § 44-7-14, precludes liability. However, as Rainey points out, there is an exception to this general rule, which is found in *Flagler Co. v. Savage*,[8] cited by Rainey.

In *Flagler Co.*, the Supreme Court concluded that an out-of-possession landlord may be liable "[i]f a building were defectively constructed by a predecessor in title, and the landlord knew or by the exercise of reasonable diligence could have known of its improper construction before the tenancy was created."[9] As the Supreme Court recently clarified, however, this is a "limited exception to the statutory limits of an out-of-possession landlord[ ]."[10] Indeed, Georgia courts have generally applied the exception only in those cases involving egregious structural defects.[11] And the exception is viable only in those cases in which a plaintiff can show "the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property."[12] According to the Supreme Court, "the reason to support the *Flagler* exception [to OCGA § 44-7-14]" is that, "[w]hen purchasing commercial or residential property, it is standard practice to engage in a thorough inspection of the property — including the integrity of any structures thereon."[13]

Accordingly, in keeping with the narrow exception of *Flagler Co.* and the Supreme Court's most recent pronouncement upon the subject, an out-of-possession landlord of a property constructed by a predecessor in interest may be held liable only for those structural defects that would be discovered during a pre-purchase building inspection. Such out-of-possession landlord is not liable for all defects because

> [o]rdinary care in the fulfillment of the landlord's duty to keep the premises in repair does not embrace an affirmative duty to make such an inspection of the premises as will disclose the existence of any and all latent defects which may actually exist therein. This would be but to place upon the landlord an absolute duty to rent premises free from latent defects. It follows that a proper application of the landlord's

---

[8] 258 Ga. 335 (368 SE2d 504) (1988).

[9] (Emphasis omitted.) Id. at 337 (2).

[10] *Martin*, supra at 126 (4), n. 16.

[11] See *Flagler Co.*, supra (restaurant patron fell down 70-foot precipice adjacent to parking lot that was concealed by foliage and lacked a protective structure or warning signs); *Spence v. C & S Nat. Bank*, 195 Ga. App. 294 (393 SE2d 1) (1990) (employee fell through floor constructed of unreinforced pressboard).

[12] (Punctuation omitted.) *Roth v. Wu*, 199 Ga. App. 665, 666 (1) (405 SE2d 741) (1991).

[13] *Martin*, supra.

duty to [inspect premises] does not, under any theory, result in making the landlord liable for a latent defect in the premises, simply because it existed at the time of the lease.[14]

Thus, we must decide whether the alleged defect — the uneven steps and small landing — constitutes the type of structural defect that would be discovered during a pre-purchase building inspection or is simply a latent defect in existence at the time 1600 Peachtree purchased the property. We find it is the latter.

Although the expert retained by Rainey contends that the defect was evident upon a "rudimentary investigation" of the accident scene, it does not follow that the landlord had superior knowledge. The standard to which we hold the out-of-possession landlord is not what defect could have been discovered *after* a fall — with the benefit of hindsight and an examination of the specific scene — but what defect would have been discovered during a routine building inspection. Here, 1600 Peachtree Street is a complex of three separate buildings that occupies over six acres of land. Given the number of stairs and landings sure to exist in a complex of that size, we fail to see how ordinary care would require the measuring of each step and landing as part of a routine building inspection. Indeed, Rainey does not contend such is the case. Her expert, an "accident construction and cause analysis engineer," does not purport to be a building inspector, and he provides no insight into inspection practices.

Under these circumstances, we find this case does not come within the narrow exception set forth in *Flagler Co.* It follows that the trial court properly granted 1600 Peachtree's motion for summary judgment.[15]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED MAY 9, 2002 — 

*Peter M. Blackford, Peter M. Blackford, Jr.*, for appellants.
*Cobb, Grabbe, Spillers & Irwin, Charles E. Johnson III*, for appellee.

---

[14] (Punctuation omitted.) *Lonard v. Cooper & Sugrue Properties*, 214 Ga. App. 862, 864 (449 SE2d 348) (1994).
[15] See *Martin*, supra.